UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL P.,

            Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

CASE NO. C19-1815-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE**

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits ("DIB"). He contends the ALJ erred in (1) failing to adequately consider medical evidence post-dating the date last insured ("DLI"), (2) rejecting the disability rating assessed by the Department of Veterans Affairs ("VA"), (3) discounting a lay statement written after the DLI, and (4) finding Plaintiff can perform other jobs in the national economy at step five. Dkt. 15 at 1. For th reasons below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff is currently 54 years old, has one year of college education and car repair training, and previously ran a car repair business. Tr. 514-55.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 1

In March 2016, he applied for benefits, alleging disability as of February 1, 2011. Tr. 448-52. His application was denied initially and on reconsideration. Tr. 162-64, 266-67. The ALJ conducted hearings in March 2017, August 2017, April 2018, February 2019 and May 2019 (Tr. 39-125), and subsequently found Plaintiff not disabled. Tr. 18-29. As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff did not engage in substantial gainful activity during the adjudicated period.

**Step two:** Through the DLI, Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis of the knee, degenerative joint disease of the left wrist, and bilateral hip replacements.

**Step three:** Through the DLI, these impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Through the DLI, Plaintiff could perform sedentary work with additional limitations: he could occasionally climb ramps and stairs. He could not climb ladders, ropes, or scaffolds. He could not stoop, crawl, or kneel. He could occasionally balance and crouch. He could occasionally reach overhead with the bilateral arms. He is ambidextrous, and had no other limitations with his right arm. With his left arm, he could lift/carry no more than five pounds. He could only occasionally handle with his left hand. He could not have had concentrated exposure to extremes of cold, vibrations, or hazards.

**Step four:** Through the DLI, Plaintiff could not perform his past work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed before the DLI, he is not disabled.

Tr. 18-29.

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 2

# DISCUSSION

## A.   Adjudicated Period

The adjudicated period in this case runs from the onset date of February 1, 2011, to the DLI of March 31, 2011.  Tr. 19.  The ALJ noted there was very little medical evidence in the record pertaining to this period, and that even reviewing the entire record, the record does not establish Plaintiff was disabled before his DLI, as required in a DIB case.  Tr. 23; 20 C.F.R. §§ 404.131, 404.321.

Plaintiff argues the ALJ erred in finding the medical records "do not reveal any twelve-month period of disabling impairment" (Tr. 23) because the finding erroneously implies the law requires an alleged onset date must be at least twelve months before a DLI.  Dkt. 15 at 5-6.  The ALJ's finding does no such thing; it simply restates the regulatory requirement that an impairment must last or be expected to last for twelve months to meet the disability definition.  *See* 20 C.F.R. §§ 404.1505, 1509 (to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least twelve months).  Plaintiff thus fails to show the ALJ misapplied the regulatory definition of disability.

Plaintiff also contends the ALJ erred in suggesting that only evidence dating to the adjudicated period is relevant to determinie if Plaintiff was disabled on or before the DLI.  Dkt. 17 at 1-4.  Again, the ALJ did no such thing: the ALJ considered the entire record (Tr. 23 ("I note that I have reviewed all of the records in this case and have considered treatment notes from after the [DLI] that may relate back to the period at issue")), including the evidence post-dating the DLI by many years, and explained that the "more recent records show worsening in the claimant's functioning [but] these do not reasonably relate back to prior to the [DLI]."  Tr. 25. Plaintiff devotes pages of his reply brief to a summary of medical evidence, but provides no

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 3

argument establishing why this evidence establishes the ALJ erred. Dkt. 17 at 2-4. Plaintiff contends this evidence supports a finding of disability, but this argument does not establish the ALJ erred. *See Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). Plaintiff has failed to show the ALJ's interpretation of the evidence is unreasonable or unsupported by substantial evidence.

For these reasons, Plaintiff fails to meet his burden to show harmful legal error in the ALJ's definition or consideration of the adjudicated period, and the Court accordingly affirms the ALJ's finding.

**B.    VA Rating**

The ALJ discussed the VA's finding Plaintiff to be 100 percent disabled as of June 21, 2013. Tr. 26 (citing Tr. 424-47). The ALJ detailed the differences between the VA's disability system and the Social Security disability program at length, and emphasized the VA's disability rating does "not provide an individualized assessment that focuses on a claimant's ability to perform work in the national economy[,]" which is the focus of Social Security's program, and thus the ALJ gave the VA's numerical rating little to no weight. Tr. 26-27. The ALJ explained he gave more weight to the findings in the VA treatment notes regarding the adjudicated period. Tr. 27.

Plaintiff argues the ALJ's reasons for discounting the VA rating are not sufficiently specific, in accordance with *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002). The Commissioner contends even if the ALJ's analysis of the VA rating is insufficiently specific, the error is harmless because the 100% VA rating is effective as of June 21, 2013, which is more

than two years after the DLI. Dkt. 16 at 5-6. Plaintiff points out on reply that during the adjudicated period, the VA rated him 90% disabled, which nonetheless constitutes "a significant level of disability." Dkt. 17 at 4 (citing Tr. 432).

The VA did indeed find Plaintiff to be limited to a significant degree during the adjudicated period. However, the VA's finding reflects an assessment of the record the ALJ's interpreted in a different manner. For example, the VA found Plaintiff to be 70% disabled based on depression (Tr. 431), but the ALJ found Plaintiff's depression to be not severe during the adjudicated period (Tr. 21) and Plaintiff has not assigned error to that finding. Considering the contradiction between the ALJ's interpretation of the record and the VA's basis for rating Plaintiff's disability, the Court finds any error in the ALJ's failure to articulate legally sufficient reasons to discount the VA rating is harmless.

**C.    Lay Statement**

Plaintiff's fiancée, Shirley Chikami, completed a third-party function report in March 2015, describing Plaintiff's symptoms and limitations. Tr. 532-39. Ms. Chikami's report primarily describes Plaintiff's conditions at the time of the report, but occasionally traces the history of those conditions as far back as 2013, although she has known Plaintiff since 1998. *Id*.

The ALJ noted Ms. Chikami's report was written four years after the DLI and she did not address whether her statement referenced Plaintiff's condition during the adjudicated period. Tr. 26. The ALJ contrasted Ms. Chikami's report with the medical record, which showed Plaintiff's condition worsened years after the DLI, and thus gave little weight to Ms. Chikami's report. *Id*.

Plaintiff contends many of the symptoms Ms. Chikami describes pertain to the pre-DLI period, such as Plaintiff's need for a cane and a back brace. Dkt. 15 at 8. But in her report Ms. Chikami indicated Plaintiff was prescribed the cane and back brace "[a]bout 1 year ago," which

still post-dates the DLI. Tr. 538. None of the rest of the symptoms Plaintiff points to in his briefing (Dkt. 15 at 8) are referenced by Ms. Chikami in a way suggesting she is describing Plaintiff's functioning during the adjudicated period because Ms. Chikami writes in the present tense. Ms. Chikami's failure to address the adjudicated period is a germane reason to discount her report. *See, e.g.*, *Capobres v. Astrue*, 2011 WL 1114256, at *5 (D. Ida. Mar. 25, 2011) (explaining that while post-DLI medical evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective). The Court accordingly affirms the ALJ's detemination.

**D.     Step Five**

Plaintiff raises a variety of arguments regarding the ALJ's step-five findings. First, Plaintiff argues the ALJ erroneously assessed the VE's testimony about the impact of Plaintiff's need for a cane in order to perform work. Dkt. 15 at 9. Indeed, the ALJ disagreed with the VE's testimony regarding whether a cane should be considered a special accommodation if one was required (Tr. 29), but ultimately found Plaintiff did not require the use of a cane. *See* Tr. 22. Because Plaintiff did not explicitly assign error to the ALJ's RFC assessment that Plaintiff did not require a cane, any error related to the ALJ's treatment of the VE's testimony on special accommodation is harmless.[3]

---

[3] In his reply brief, Plaintiff argues that the medical records prove that he did require a cane (Dkt. 17 at 7), and Plaintiff refers to evidence showing that he was prescribed a cane in 2010 (Dkt. 17 at 4 (citing Tr. 872, 1174)), but that evidence does not establish the degree to which or the length of time for which Plaintiff required a cane.

Furthermore, the ALJ restricted Plaintiff to performing sedentary work, and none of the evidence cited by Plaintiff shows that, contrary to the ALJ's finding, Plaintiff would require the use of a cane to perform his job duties. *See* Tr. 29 (ALJ's alternative finding that if Plaintiff did require a cane, it would be "used simply to ambulate and allow travel to and from the work station, and not needed for actual performance of job duties"). Thus, given that Plaintiff has not established error in the ALJ's primary or alternative findings on the issue of the cane, Plaintiff has not shown that this issue led to harmful legal error at step five.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 6

Plaintiff also argues because the ALJ found him limited to lifting five pounds with his left arm, he could not perform sedentary work, which requires the ability to lift 10 pounds. Dkt. 15 at 9-10. But the ALJ included this limitation in the hypothetical posed to the VE, and the VE identified jobs compatible with that restriction. *See* Tr. 117. The ALJ was entitled to rely on such testimony. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (explaining that an ALJ may rely on VE testimony elicited in response to a hypothetical describing the claimant's limitations, in making findings at step five). If Plaintiff was completely unable to use his left arm, the VE testified that no jobs would be available, but the ALJ did not find Plaintiff so limited. Tr. 122.

Furthermore, the ALJ found Plaintiff capable of lifting 10 pounds with his right hand, which is compatible with the requirements of the sedentary jobs identified by the ALJ. *See* Tr. 22; Dictionary of Occupational Titles ("DOT") 237.367-014, *available at* 1991 WL 672186 (call-out operator); DOT 379.367-010, *available at* 1991 WL 673244 (surveillance system monitor). Plaintiff has cited no binding authority indicating a person must be able to lift 10 pounds with each arm to be able to perform sedentary work: he has cited a declaration from a different VE suggesting otherwise, but the existence of this conflict does not establish the ALJ erred in relying on the VE testimony provided at the hearing. *See* Tr. 709.

Plaintiff also notes the ALJ limited Plaintiff to occasional handling with the left hand, although the job of charge account clerk requires frequent handling. Dkt. 15 at 10 (citing Tr. 709, 720). The Commissioner concedes the ALJ erred in finding Plaintiff could perform the job of charge account clerk, but argues this error is harmless because the other jobs identified at step five exist in significant numbers even when the charge account clerk numbers are subtracted. *See* Dkt. 16 at 8. Plaintiff acknowledges the Commissioner's concession on reply (Dkt. 17 at 8),

but does not argue that this error is not harmless.  Given the other two jobs exist in significant numbers (totaling more than 350,000 national jobs (Tr. 28-29)), the Court finds that this error is harmless.

Plaintiff also emphasizes although the ALJ found him capable of working as a surveillance system monitor, these jobs now exist only in airports. Dkt. 15 at 10.  Plaintiff's opening brief does not explain why this fact would suggest error in the ALJ's decision, but on reply Plaintiff cites evidence the job as performed in airports is no longer an unskilled job. Dkt. 17 at 9 (referencing Tr. 710).  Nonetheless, the VE reasonably referred to the job definition in the DOT, wherein the job is defined as an unskilled job, and the ALJ was entitled to rely on this testimony.  *See* DOT 379.367-010, *available at* 1991 WL 673244.  Even though Plaintiff has presented conflicting evidence on this issue, he has not shown the ALJ erred in relying on VE testimony provided at the hearing that was consistent with the DOT.

Next, Plaintiff notes only 27.7% of the call-out operator jobs are performed by men and suggests that this fact means that the available job market for him is reduced to an insignificant number. Dkt. 15 at 10.  This argument is unpersuasive; the prevalence of women or men performing a job does not imply anything about Plaintiff's ability to perform that job.  Thus, this argument does not advance Plaintiff's challenge to the ALJ's decision.

Plaintiff further argues there is a conflict between the ALJ's RFC assessment, which precludes all overhead reaching, and the step-five jobs requiring some reaching. Dkt. 15 at 11.  Indeed, the call-out operator job requires occasional reaching (DOT 237.367-014, *available at* 1991 WL 672186), but surveillance system monitor requires no reaching (DOT 379.367-010, *available at* 1991 WL 673244) and exists in significant numbers independently (96,260 jobs in the national economy (Tr. 29)).  Accordingly, under these circumstances, the Court finds any

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 8

possible unexplained conflict between the ALJ's RFC assessment and the finding that Plaintiff could perform the call-out operator job is harmless.

Lastly, Plaintiff suggests some error related to the creation of the record, attaching to his opening brief two letters requesting the ALJ issue subpoenas to the VE to produce the evidence relied upon in rendering hearing testimony, which Plaintiff contends the ALJ failed to include in the record or address in the decision. *See* Dkt. 15 at 15-22. As noted by the Commissioner, however, these letters address the March 2017 hearing, rather than the subsequent hearings where VEs provided the testimony relied upon by the ALJ at step five. Dkt. 16 at 8. At hearings in 2018 and 2019, counsel had the opportunity to cross-examine VEs and did not apparently renew his requests for subpoenas. Tr. 67-80, 120-23. Instead, after the ALJ's decision was entered, Plaintiff requested Appeals Council review and requested extra time to file additional vocational information, and such information was filed, but this declaration does not address the same evidentiary concerns addressed in the subpoena requests. *Compare* Tr. 701-10 *with* Dkt. 15 at 15-22. Under these circumstances, Plaintiff fails to show any prejudice resulted from the ALJ's failure to exhibit or explicitly address the subpoena requests related to the 2017 hearing.

For all these reasons, Plaintiff has failed to establish the ALJ harmfully erred at st

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 21st day of July, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE - 9